William A. RILLING,
Plaintiff–Appellant,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware Corporation, Defendant–Appellee.

No. 89–35190.

United States Court of Appeals,
Ninth Circuit.

Submitted May 7, 1990.*

Decided July 30, 1990.

Owen J. Wales, Seattle, Wash., for plaintiff-appellant.

Susan L. Pierini, Kurt W. Kroschel & Associates, Bellevue, Wash., for defendant-appellee.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a).

Before FARRIS, PREGERSON and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

William A. Rilling appeals the magistrate's grant of summary judgment in favor of Burlington Northern Railroad Co. (Burlington or the company). Rilling alleges that Burlington breached labor protective conditions which the Interstate Commerce Commission (ICC) had imposed on Burlington pursuant to the merger which formed the company. The magistrate found that he had jurisdiction to determine the validity of a release which Rilling executed in favor of Burlington, and that the release was valid, entitling Burlington to summary judgment. We conclude that the ICC had primary jurisdiction over Rilling's claim, and we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Rilling was the manager of Burlington's Seattle Regional Accounting Office. Burlington reorganized this office in March 1986, eliminating Rilling's position. Rilling was entitled to rights under labor protective conditions the ICC imposed on Burlington in conjunction with the 1970 merger that created the company. *See Great N. Pac.—Merger—Great N.*, 331 I.C.C. 228 (1967), *aff'd sub nom. United States v. United States*, 296 F.Supp. 853 (D.D.C. 1968), *aff'd sub nom. United States v. Interstate Commerce Comm'n*, 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970) (*Northern Lines*). Pursuant to its interpretation of these conditions, Burlington advised Rilling that to stay with the company, Rilling would have to accept a reduction of his $3,535 per month salary to $1,005 per month and a transfer to a site designated by Burlington.

Burlington also offered Rilling an alternative. If Rilling executed a release agreement relinquishing his labor protective rights, the company would grant Rilling a leave of absence until he was eligible for early retirement, health care benefits during this leave, and six months' salary (totaling $21,129). Rilling accepted this arrangement and executed the release on April 21, 1986.

In a case involving another employee, the ICC subsequently determined that Burlington's interpretation of the labor protective conditions was incorrect and that Burlington had breached the merger agreement. *Great N. Pac. & Burlington Lines, Inc.*, Finance Docket No. 21478 (Sub–No. 6) slip op. (November 25, 1986) WESTLAW FTRAN–ICC database and 1988 ICC LEXIS 100 (March 16, 1988). Rilling filed suit in federal district court seeking a similar result in his case. Rilling and Burlington consented to proceed through trial before a magistrate. The magistrate found that the release was valid and binding on Rilling and that it therefore precluded his claim. The court then entered summary judgment in favor of Burlington.

## DISCUSSION

We review the magistrate's grant of summary judgment de novo to determine whether he properly applied the relevant substantive law and whether a genuine issue of material fact exists. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629–32 (9th Cir.1987). The existence of subject matter jurisdiction is a question of law reviewed de novo. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

Rilling did not include a statement of jurisdiction in his complaint or in his briefs to this court. "Since [Rilling] made no allegations in the complaint respecting the citizenship of [Burlington] or the dollar value of the amount in controversy, the district court could not properly exercise diversity jurisdiction over [his] claim." *Citizen's Comm. to Save the Land Grant Railroads v. Burlington N., Inc.*, 708 F.2d 1430, 1435 (9th Cir.1983); *see* 28 U.S.C. § 1332 (1982). Thus, the magistrate could have properly exercised jurisdiction only if

Rilling's claim arises under federal law—in this case, the ICC labor protective conditions imposed on Burlington in *Northern Lines*. *See* 28 U.S.C. § 1331.

■ Using the ICC labor protective conditions as the basis for subject matter jurisdiction, however, raises the issue of whether the ICC has primary jurisdiction over Rilling's underlying claims. "Primary jurisdiction is a doctrine of common law, wholly court-made, that is designed to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented." 4 K. Davis, *Administrative Law Treatise* 81 (2d ed. 1983); *see Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952). "The doctrine is applicable in federal courts when an action 'requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" *United States v. Yellow Freight Sys., Inc.*, 762 F.2d 737, 739 (9th Cir.1985) (quoting *United States v. Western Pac. R.R.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)). Other circuits have concluded that the ICC has primary jurisdiction over claims arising from labor protective conditions it has imposed in a merger approval order. *See Engelhardt v. Consolidated Rail Corp.*, 756 F.2d 1368, 1369 (2d Cir. 1985) (per curiam); *Zapp v. United Transp. Union*, 727 F.2d 617, 625 (7th Cir. 1984); *Augspurger v. Brotherhood of Locomotive Eng'rs*, 510 F.2d 853, 860 (8th Cir.1975).

The magistrate found "that the doctrine of primary jurisdiction does not require that the issue of the validity of the release be submitted to the ICC" because "[t]he issue is one of general contract law and does not come within the special competence of the ICC." We find that, before we can reach the issue of general contract law, Rilling's challenge to the validity of the release raises two issues which require a determination of the rights and obligations the ICC has provided in its labor protective conditions.

First, Rilling argues that agreements to vary merger protective conditions imposed by the ICC "'may not substantially abrogate employees' rights grounded in an I.C.C. order.'" *Norfolk & W. R.R. Co. v. Nemitz*, 404 U.S. 37, 44, 92 S.Ct. 185, 189, 30 L.Ed.2d 198 (1971) (quoting *Nemitz v. Norfolk & W. Ry. Co.*, 436 F.2d 841, 848 (6th Cir.1971)). Rilling maintains that the release he executed in favor of Burlington is invalid because it is an agreement to vary merger protective conditions, and it substantially abrogates his rights under *Northern Lines*. Whether the release is such an agreement is an issue grounded in a proper interpretation of the ICC's *Northern Lines* merger order and thus must be presented first to the ICC.

Second, Rilling argues that Burlington was under a duty fully to inform him of his rights under the ICC's merger order. Moreover, he contends that employees protected under this order should receive the same solicitude and the searching scrutiny of releases afforded seamen and plaintiffs making claims under 42 U.S.C. § 1983. *See Jones v. Taber*, 648 F.2d 1201, 1203–04 (9th Cir.1981). Under this heightened scrutiny, Rilling maintains, Burlington breached its duty fully to inform him of his rights when it erroneously represented that its interpretation of the ICC's labor protective conditions was correct.

Whether such a duty is, or should be, imposed on Burlington under *Northern Lines* is a question which requires an interpretation of the ICC's merger order and thus is within the ICC's special competence. Rilling's challenge to the validity of the release requires "the sort of determination (involving an extremely complex ICC–supervised merger) classically committed to agency discretion under the doctrine of primary jurisdiction." *Zapp*, 727 F.2d at 625. The validity of the release, therefore, should be determined in the first instance by the ICC. "After the ICC has clarified [Rilling's] rights, a suit in federal court . . . may be entirely proper." *Id.*

## CONCLUSION

The magistrate incorrectly concluded that the validity of the release was suffi-

ciently removed from the rights granted under the ICC's merger order to preclude application of the doctrine of primary jurisdiction. We therefore reverse the magistrate's decision and remand for proceedings consistent with this opinion.

REVERSED and REMANDED.