**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JUDAH ROSENWALD; CINDY RUTTER, on Behalf of Themselves and All Others Similarly Situated; CRAIG CHOURAKI-LEWIN, | No. 24-299 |
| | D.C. No. 3:22-cv-04993-LB |
| *Plaintiffs - Appellants*, | |
| v. | OPINION |
| KIMBERLY-CLARK CORPORATION, | |
| *Defendant - Appellee*. | |

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted June 11, 2025
San Francisco, California

Filed September 24, 2025

Before: MILAN D. SMITH, JR. and N. RANDY SMITH, Circuit Judges, and DOUGLAS L. RAYES, District Judge.[*]

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Diversity Jurisdiction

The panel vacated the district court's judgment against plaintiffs and remanded with instructions to dismiss this case without prejudice because neither the district court nor the appellate court had diversity jurisdiction.

Plaintiffs brought several California causes of action against Kimberly-Clark Corporation claiming diversity jurisdiction. Kimberley-Clark manufactures Kleenex Germ Removal Wet Wipes, which plaintiffs purchased. Plaintiffs alleged that the wipes' labels misled them into believing that the wipes contained germicides, not just soaps, and would kill germs, not just wipe them away.

The panel held that plaintiffs' second amended complaint ("SAC") did not allege Kimberly-Clark's citizenship, and did not allege the amount in controversy. Agreeing with the Tenth Circuit and disagreeing with the Fifth Circuit, the panel held that a district court may not establish diversity of citizenship purely by judicial notice. In addition, the SAC stated no dollar value for the amount in controversy, either in the jurisdictional allegations or elsewhere. Standing alone, the SAC did not adequately allege subject matter jurisdiction.

On appeal, plaintiffs, at the court's invitation, submitted a proposed Third Amended Complaint ("TAC"). The plaintiffs successfully alleged diversity of citizenship for

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

purposes of either 28 U.S.C. §§ 1332(a) or 1332(d)(2). However, they conceded that they could not allege over $5 million in controversy pursuant to § 1332(d)(2), and the panel held that plaintiffs had not adequately alleged over $75,000 in controversy pursuant to § 1332(a). The TAC said nothing to suggest any class member bought enough wipes to bring their actual damages near $1,000. Nor could any class member claim $10,000 in punitive damages. Even assuming $1,000 in actual damages and $10,000 in punitive damages were in controversy, plaintiffs cannot find the missing $64,000 by adding in attorneys' fees. Accordingly, the panel concluded that there was no subject-matter jurisdiction. The claims of the non-California plaintiffs did not change that outcome.

The panel dismissed this case without prejudice for lack of subject-matter jurisdiction, holding that constructive amendment and further leave to amend would be inappropriate. The panel vacated the district court's judgment against plaintiffs and remand with instructions to dismiss this case without prejudice.

---

**COUNSEL**

David M. Rosenberg-Wohl (argued), Hershenson Rosenberg-Wohl APC, San Francisco, California, for Plaintiffs-Appellants.

Theodore J. Boutrous Jr. (argued), Timothy W. Loose, Tim Le, and Patrick J. Fuster, Gibson Dunn & Crutcher LLP, Los Angeles, California, for Defendant-Appellee.

## OPINION

M. SMITH, Circuit Judge:

Plaintiffs-Appellants brought several California causes of action against Defendant-Appellee Kimberly-Clark Corporation, on behalf of themselves and a class of consumers. They sued in federal court, claiming diversity jurisdiction. After motions practice, the district court dismissed Plaintiffs' Second Amended Complaint (SAC) pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs appealed. On appeal, we questioned our subject-matter jurisdiction over this case because Plaintiffs had not alleged Kimberly-Clark's citizenship or the amount in controversy. Finding their allegations insufficient, we allowed Plaintiffs to move to amend their pleadings pursuant to 28 U.S.C. § 1653. Even after having done so, however, Plaintiffs' proposed amendments do not establish a sufficient amount in controversy. We lack subject-matter jurisdiction to hear this case, and so did the district court. We vacate and remand with instructions to dismiss this case without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Kimberly-Clark manufactures Kleenex Germ Removal Wet Wipes. Those wipes are sold in packages with a front and back label. The front label says that the wipes are for "germ removal" and that the product "safely wipes away 99% of germs from skin" with "no harsh chemicals." Next to the last two statements, the front label has a banner that says "WIPES AWAY" in all capital letters. The back label says that the wipes provide "[t]he [c]leansing [p]ower of [w]ater." The back label also provides a list of ingredients; it indicates that the product contains soaps but no germicides.

Plaintiffs allege that they purchased Kleenex Germ Removal Wet Wipes. They sued Kimberly-Clark in August 2022, claiming that the wipes' labels misled them into believing that the wipes contained germicides, not just soaps, and would kill germs, not just wipe them away. The district court dismissed the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (6). Specifically, it dismissed the non-California Plaintiffs' claims for lack of personal jurisdiction and dismissed the remaining claims because it was not plausible that the labels would deceive a reasonable consumer. It did the same with the SAC, this time without leave to amend. Plaintiffs timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

"[A] federal court always has jurisdiction to determine its own jurisdiction . . . ." *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1153 (9th Cir. 2022) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)). "[W]e are obliged to inquire sua sponte whenever a doubt arises as to the existence of federal jurisdiction." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 671 (9th Cir. 2021) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977)).

## ANALYSIS

The sole question we decide on appeal is whether Plaintiffs have adequately alleged subject-matter jurisdiction. Plaintiffs have alleged no federal claims, and neither party contends that we could exercise jurisdiction

based on any provision other than 28 U.S.C. § 1332(a) or § 1332(d)(2).**[1]**

Thus, we consider only diversity jurisdiction and its two requirements. First, both § 1332(a) and § 1332(d)(2) require Plaintiffs to allege diversity of citizenship. Second, in diversity cases, the plaintiff's complaint must place a certain amount in controversy—more than $75,000 for § 1332(a) and more than $5 million for § 1332(d)(2).

We apply these criteria to Plaintiffs' operative SAC. Because the SAC says nothing about Kimberly-Clark's citizenship, it does not allege diversity of citizenship. Even if it had, the SAC says nothing about the amount in controversy. Thus, standing alone, Plaintiffs' SAC does not adequately allege subject-matter jurisdiction.

Even on appeal, however, "[d]efective allegations of jurisdiction may be amended, upon terms" set by the court. 28 U.S.C. § 1653. We therefore invited Plaintiffs to file a motion for leave to amend their SAC. They did so. In their proposed Third Amended Complaint (TAC), Plaintiffs added the missing citizenships, successfully alleging diversity for purposes of either §§ 1332(a) or 1332(d)(2). Plaintiffs concede, however, that they cannot allege over $5 million in controversy pursuant to § 1332(d)(2), and we hold that they have not alleged over $75,000 in controversy pursuant to § 1332(a). We thus lack subject-matter jurisdiction.

We explain our analysis in four sections: we explain why the SAC failed to allege both diversity of citizenship and any amount in controversy, why we granted Plaintiffs leave to

---

[1] The latter provision comes from the Class Action Fairness Act (CAFA).

amend, why the proposed TAC alleges complete and minimal diversity but still fails to allege more than $75,000 in controversy, and why we now dismiss without prejudice.

## I.  The SAC

The SAC fails to allege either diversity of citizenship or an amount in controversy.  We consider each requirement separately.

### A.  Diversity of Citizenship

Section 1332(a) requires complete diversity—no plaintiff may be from the same state as any defendant.  *See Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1181 (9th Cir. 2004); *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004).  Section 1332(d)(2), by contrast, requires minimal diversity, which is satisfied whenever "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]"  28 U.S.C. § 1332(d)(2)(A).  Because courts cannot apply either test without the defendant's citizenship, we have jurisdiction only if Plaintiffs adequately alleged Kimberly-Clark's citizenship.  *See* Fed. R. Civ. P. 8(a)(1).

The SAC does not do so.  Its jurisdictional section alleges that each plaintiff is a citizen of California, Washington, or Wyoming.  But it says nothing about Kimberly-Clark's citizenship.

Nevertheless, both parties argue that Plaintiffs adequately alleged Kimberly-Clark's citizenship.  Plaintiffs say Exhibit 1 to the SAC establishes Kimberly-Clark's citizenship.  Both parties also argue that the district court appropriately took judicial notice of Kimberly-Clark's citizenship.  On both points, the parties are incorrect.

First, Exhibit 1 does not allege Kimberly-Clark's citizenship. Exhibit 1 is a letter from Plaintiffs' counsel to two of Kimberly-Clark's offices, one in Texas and the other in Wisconsin. The letter does not state Kimberly-Clark's citizenship. Moreover, a corporation can have an office in a state without being a citizen of that state. *See* 28 U.S.C. § 1332(c)(1). For example, Kimberly-Clark has a Wisconsin address, but neither party contends it is a Wisconsin citizen. Conversely, a corporation is a citizen of the place where it is incorporated even if it has no office there. *See id.*

Second, we hold that a district court may not establish diversity of citizenship purely by judicial notice. Our sister circuits are divided on whether a corporate defendant's citizenship can be judicially noticed, and we have not decided the question. In the Tenth Circuit, a court cannot judicially notice a party's citizenship. *See Buell v. Sears, Roebuck & Co.*, 321 F.2d 468, 471 (10th Cir. 1963). In the Fifth Circuit, however, a court may do so.[2] *Swindol v.*

---

[2] *Swindol* argues that several other circuits have adopted its position. It is only partly correct. The Second Circuit has taken judicial notice of a corporation's citizenship, but it did not explain its reasoning. *Caffery v. New York Cent. R.R. Co.*, 324 F.2d 711, 712 (2d Cir. 1963). The Third Circuit also judicially noticed a party's citizenship, although it did so without asking whether that was proper. *Wallace v. Media News Grp., Inc.*, 568 F. App'x 121, 123 n.2 (3d Cir. 2014).

However, the other cases *Swindol* cites did not notice a party's citizenship. *Town of Bethel v. Atl. Coast Line R.R. Co.*, 81 F.2d 60, 60–61, 61 n.1 (4th Cir. 1936) (taking judicial notice of a statute); *Berkowitz v. Phila. Chewing Gum Corp.*, 303 F.2d 585, 587–88 (3d Cir. 1962) (taking judicial notice of a legal proceeding whereby the plaintiff was appointed as guardian ad litem). *Swindol* also cited an Eleventh Circuit case that said it was taking "judicial notice" of the fact that no class member could recover more than $75,000 in damages. *Leonard v. Enter.*

*Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 & n.2 (5th Cir. 2015).

We agree with the reasoning of the Tenth Circuit. As we have held, "[t]he party seeking to invoke the district court's diversity jurisdiction *always* bears the burden of *both pleading and proving* diversity jurisdiction." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613–14 (9th Cir. 2016) (emphases added). Yet "what may be judicially noticed need not be pleaded." *Buell*, 321 F.2d at 471. If a "court could take judicial notice of [a party's citizenship,] there would be no necessity at all for alleging diversity of citizenship between corporate parties in Federal courts." *Id.* We stand by the principle set forth in *NewGen*, and we hold that plaintiffs may not avoid pleading jurisdiction by relying on judicial notice.

By contrast, we find the Fifth Circuit's logic unpersuasive. It relied on Fed. R. Evid. 201(b)(2), which allows courts to judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Swindol*, 805 F.3d at 519 (quoting Fed. R. Evid. 201(b)(2)). The Fifth Circuit, however, assumed that this Rule of Evidence applies even when courts evaluate whether a party has adequately *pleaded* subject-matter jurisdiction. *See id.* There is reason to doubt this assumption. For example, the rule against hearsay does not apply when determining whether a party has adequately pleaded the amount in controversy because the "'burden of describing how the controversy exceeds [the

---

*Rent a Car*, 279 F.3d 967, 974 (11th Cir. 2002). That statement seems to reflect the Eleventh Circuit's assessment of the potential recovery; the Eleventh Circuit did not take notice of an underlying fact. That is what Plaintiffs would need to do here.

jurisdictional threshold]' constitutes 'a pleading requirement, not a demand for proof.'" *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013) (quoting *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944–45 (8th Cir. 2012)).

Even if Rule 201 did apply here, we cannot use it to establish that a corporation does not share citizenship with a plaintiff. A corporation is a citizen of "the state under whose laws it is organized or incorporated," and we can find that information in online public records. *Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009). But a corporation is also a citizen of "the state of its 'principal place of business.'" *Id.* (quoting 28 U.S.C. § 1332(c)(1)). Although "in practice" this will "normally be the place where the corporation maintains its headquarters," we must be a little more searching. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). We must be sure "the headquarters is the actual center of direction, control, and coordination" for the corporation. *Id.* For example, the principal place of business cannot "simply [be] an office where the corporation holds its board meetings." *Id.* Rarely can we "accurately and readily determine [that information] from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Without diversity of citizenship, we lack subject-matter jurisdiction.

## B. Amount in Controversy

Even if Plaintiffs had alleged Kimberly-Clark's citizenship, we would still lack jurisdiction. In diversity cases, the plaintiff's complaint must place a certain amount in controversy. That amount is more than $75,000 pursuant to § 1332(a) and more than $5 million pursuant to § 1332(d)(2). That said, the § 1332(d)(2) requirement is

easier to satisfy in one sense: courts "aggregate[]" "the claims of the individual class members."  28 U.S.C. § 1332(d)(6).  The same rule does not apply to § 1332(a). *See Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 545 n.10 (5th Cir. 2006); *see also Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013).

Either way, "[w]hen a plaintiff originally files in federal court," as these Plaintiffs did, "'the amount in controversy is determined from the face of the[ir] pleadings.'" *Rainero v. Archon Corp.*, 844 F.3d 832, 840 (9th Cir. 2016) (quoting *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010)).  Accordingly, Plaintiffs must "affirmatively allege[]" the "essential elements of diversity jurisdiction," including the amount in controversy.  *Id.* (quoting *Bautista v. Pan Am. World Airlines, Inc.*, 828 F.2d 546, 552 (9th Cir. 1987)).  To be sure, if Plaintiffs "alleged that the amount in controversy exceeds" the threshold, "the jurisdictional question [would be] determined by th[ose] allegations" unless they are not made in "good faith."  *Molokai Homesteaders Co-op. Ass'n v. Morton*, 506 F.2d 572, 576 (9th Cir. 1974).  On the other hand, if Plaintiffs "made no allegations in the complaint respecting . . . the dollar value of the amount in controversy, the district court could not properly exercise diversity jurisdiction over [their] claim[s]." *Rilling v. Burlington N. R.R. Co.*, 909 F.2d 399, 400 (9th Cir. 1990) (quoting *Citizen's Comm. to Save the Land Grant R.Rs. v. Burlington N., Inc.*, 708 F.2d 1430, 1435 (9th Cir. 1983)).  Neither could we.

That is exactly the problem here.  The SAC states no dollar value for the amount in controversy, either in the jurisdictional allegations or elsewhere.

The cases cited by Kimberly-Clark do not change that conclusion. To be sure, "[t]he rule governing dismissal for want of jurisdiction in cases brought in the federal court is that . . . the sum claimed by the plaintiff controls . . . [unless] [i]t . . . appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938) (footnotes omitted). Because Plaintiffs have not claimed any sum in their pleadings, we cannot apply the legal-certainty test. Likewise, it is true that "a removing defendant . . . 'is permitted to rely on "a chain of reasoning that includes assumptions"'" to calculate the amount in controversy." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019)). Here, however, Kimberly-Clark has not filed a "notice of removal [with] a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)). Indeed, because the Plaintiffs originally filed this case in federal court, no notice of removal was filed at all.

Because Plaintiffs filed in federal court, the SAC must allege that the amount in controversy exceeds the jurisdictional threshold. Because it did not, we cannot exercise jurisdiction without more.

## II. Leave to Amend the SAC

"Under 28 U.S.C. § 1653, we have the authority to grant leave to amend a complaint in order to cure defective allegations of jurisdiction." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 (9th Cir. 2002) (per curiam). That statute "permit[s] correction of incorrect statements about extant jurisdiction." *Id.* "[S]ection 1653's liberal amendment rule

permits a party who has not proved, or even alleged, that diversity exists to amend his pleadings even as late as on appeal." *NewGen,* 840 F.3d at 613 (quoting *D.C. ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1044 (D.C. Cir. 1986)).  If it is "'at all possible to determine from the record that jurisdiction does in fact exist,'" the interest in "avoid[ing] the needless expenditure of judicial resources" weighs in favor of amendment.  *Id.* (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 639 (2d Cir. 2005)).  Thus, although courts need not always allow amendment, doing otherwise "is not favored." *Fid. & Cas. Co. v. Rsrv. Ins. Co.*, 596 F.2d 914, 918 (9th Cir. 1979).

We invited Plaintiffs to move for leave to amend their allegations.  Judicial economy supported that decision.  Also, inviting amendment would not prejudice either party: both contend that we have jurisdiction.  Moreover, we decided that doing so would not be futile.

Plaintiffs could easily have alleged diversity of citizenship.  Both parties agree that Kimberly-Clark is a citizen of Delaware and Texas; that fact had just not been properly pleaded.  If so, Kimberly-Clark does not share citizenship with any of the named Plaintiffs, so either minimal or complete diversity would be satisfied.

Also, we thought Plaintiffs might be able to allege more than $5 million in controversy.  Kimberly-Clark submitted a declaration saying it earned $6 million nationwide from sales of the Kleenex Germ Removal Wet Wipes during the statutory period.  Plaintiffs might be able to place the full value of Kimberly-Clark's nationwide sales in controversy.  Or they might be able to place enough of Kimberly-Clark's California sales in controversy that attorneys' fees and punitive damages would reach the required amount.

Ultimately, however, Plaintiffs only succeeded in fixing the diversity-of-citizenship problem.

## III.   The Proposed TAC

The proposed TAC solves the diversity-of-citizenship problem, but Plaintiffs' amount-in-controversy allegations remain insufficient.

### A.  Diversity of Citizenship

Plaintiffs have alleged diversity of citizenship. The proposed TAC now alleges the citizenship of each party. Because Kimberly-Clark does not share citizenship with any of the named Plaintiffs, there is complete diversity and, as a subset of that, minimal diversity. *See Supreme Tribe of Ben Hur v. Cauble*, 255 U.S. 356, 366 (1921) (disregarding unnamed class members while assessing complete diversity). Thus, Plaintiffs can rely on either §§ 1332(a) or 1332(d)(2).

### B.  Amount in Controversy

Plaintiffs, citing Rule 11, confess the class does not seek more than $5 million. Thus, they must allege more than $75,000 is in controversy. Each named plaintiff—and potential class member—bought wipes for themselves. Thus, "their claims are separate and distinct," so "aggregation is not permitted." *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 545 (9th Cir. 1985). Only "one plaintiff [must] satisf[y] the amount-in-controversy requirement for diversity jurisdiction[;] the other plaintiffs come in under the court's supplemental jurisdiction regardless of whether their individual claims satisfy the requirements of § 1332." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006); *see Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005). In short, Rosenwald must plausibly

allege that at least one class member could recover more than $75,000.

In their proposed TAC, Plaintiffs have claimed that the amount in controversy exceeds $75,000. Their allegations suffice unless we can say "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul*, 303 U.S. at 289.

Unfortunately, their allegations fall short. Plaintiffs allege they can surmount the jurisdictional threshold with attorney's fees alone. Elsewhere, they suggest each plaintiff can recover $1,000 in actual damages and up to $10,000 in punitive damages. Plaintiffs have not adequately alleged that more than $75,000 is in controversy because, even assuming a class member has more than $1,000 in actual damages and more than $10,000 in punitive damages, no class member can get the rest of the way above $75,000 by adding in attorney's fees. Also, contrary to Kimberly-Clark's contention, we may not fold in the claims of the non-California class members.

## 1. Actual Damages

Beginning with actual damages, Plaintiffs suggest that the class members could recover $1,000 each under California's Consumer Legal Remedies Act (CLRA). They misread the CLRA's statutory-damages provision. The "*total* award of damages in a class action" must be at least $1,000, but *individual* recoveries have no floor. *See* Cal. Civ. Code § 1780(a)(1) (emphasis added). Because Kimberly-Clark sells wet wipes "throughout the US, . . . in drug stores such as Walgreens, CVS, and Rite Aid, online through Amazon, and many other places such as Stop and Shop," we conclude that, at a minimum, the class includes at least 1,000 Californians. If so, the $1,000 provision gives the class less

than a dollar each. This is less than the amounts they actually paid, which Rosenwald suggests range from $0.99 to $14.03. Accordingly, those amounts control.

Even $14.03 is probably an overly generous estimate of the actual damages. That assumes the class members can recover the full price of the wipes. However, no plaintiff can recover "[a] full refund" unless they "prove the product had *no* value to them." *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015) (emphasis in original). Plaintiffs claim the class members "received no value for their money" because the product only contained soaps, and soap is "readily available at sinks everywhere, and at no cost." We agree with Kimberly-Clark that this allegation is "far-fetched" at best. People pay for soaps even though soap is sometimes free in public spaces. Indeed, soap is only free because *someone* paid for it. We will assume the class can get a full refund because, even so, the actual damages are well below $1,000.

Plaintiffs are still mistaken about actual damages even if some class members were repeat purchasers. Their actual-damages calculation uses the prices for a "single wipe," single "packet," or single "pack of 48." Some class members probably bought in larger quantities. But all the proposed TAC says about repeat purchasers is that one named plaintiff bought the product twice and another bought "more than once." The TAC says nothing to suggest any class member bought enough wipes to bring their actual damages near $1,000.

## 2. Punitive Damages

Nor can any class member claim $10,000 in punitive damages.

For one thing, only Plaintiffs' motion suggests that punitive damages could reach that number. They omit that allegation from their proposed TAC. We might be able to dodge this defect because, as we note below, we have some authority to constructively amend pleadings to include jurisdictional allegations made in briefs and motions.

But we have another problem we cannot ignore. Plaintiffs seem to reach $10,000 in punitive damages by taking actual damages of $1,000 and multiplying by 10. Plaintiffs are correct that they cannot claim punitive damages more than 10 times actual damages. "[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Often, even "an award of more than four times the amount of compensatory damages [will] be close to the line of constitutional impropriety." *Id.* Nevertheless, Plaintiffs' punitive-damages calculation relies on an erroneous estimate of actual damages. Because nothing in the TAC permits a reasonable inference that any class member's actual damages are anywhere near $1,000, punitive damages are, at most, far below $10,000.

### 3.  Attorney's Fees

Even if we assume that $1,000 in actual damages and $10,000 in punitive damages are in controversy, Plaintiffs cannot find the missing $64,000 by adding in attorney's fees.

Plaintiffs claim they can close the gap because the class incurred more than $75,000 in fees per named plaintiff. In a class action, however, "the potential attorneys' fees should be attributed . . . pro rata to each class member[.]" *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982). We

have rejected the argument that they should be "attributed to the named plaintiffs only . . . or . . . that the potential fees should be attributed to the class as a whole and treated as a common fund."[3] *Id.* Thus, even if Rosenwald has $11,000 in actual and punitive damages, he needs $64,000 in fees *per class member*.

In turn, to find the amount of attorney's fees required, we need the number of class members. Rosenwald does not allege the class's size, only that "[t]here are so many potential class members that individual joinder of class members is impractical." Rosenwald accepts that $6 million of wipes were sold nationwide. At most, the packages identified in the proposed TAC cost $14.03. Thus, at least

---

[3] *Goldberg* relied on a case arguably superseded by amendments to the supplemental-jurisdiction statute. *See id.* (citing *Zahn v. Int'l Paper Co.*, 414 U.S. 291 (1973)); *cf. In re Abbott Lab'ys*, 51 F.3d 524, 527–29 (5th Cir. 1995) (discussing the effect of the Judicial Improvements Act of 1990 on *Zahn*). We relied on *Goldberg* even after the amendments. *In re Ford Motor Co.*, 264 F.3d 952, 963 (9th Cir. 2001) (requiring punitive damages, like attorney's fees, be divided among the class). And our sister circuits follow the same rule. *See, e.g.*, *Kessler v. Nat'l Enters., Inc.*, 347 F.3d 1076, 1080 (8th Cir. 2003) (holding fees "must be determined on a pro rata basis"); *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1274 (11th Cir. 2000) ("For amount in controversy purposes, the amount of fees must be attributed *pro rata* among all of the class members, resulting in a relatively small sum for each member."). To be sure, one of our sister circuits once divided attorney's fees among the named plaintiffs because the statute awarded fees to named plaintiffs specifically. *See Abbott*, 51 F.3d at 526–27. Even if we could square that rule with *Goldberg*, *Abbott* is distinguishable. The statute here awards "attorney's fees to a prevailing plaintiff," not just a prevailing named plaintiff, Cal. Civ. Code § 1780(e), and we have held "that attorneys' fees awarded under § 1780 must be divided among all members of the plaintiff class for purposes of amount in controversy," *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001).

425,000 were sold nationwide. In reality, the number of units is many times larger, because packages were often sold for $0.99 or $2.99. We will give Rosenwald the benefit of the doubt, and we will analyze the figure of 425,000 units for now. For now, we also assume that those units were sold evenly across the country. California contains about 1/8 of the US population, yielding approximately 53,500 units. *See Population*, United States Census Bureau (June 16, 2025), https://www.census.gov/topics/population.html. If each class member bought one unit, the class has 53,500 members. To get $64,000 in fees per class member, Rosenwald needs $3.4 billion in total fees. He has no chance of nearing that figure.

The result is the same even if some class members bought the wipes more than once or Californians buy fewer wipes per capita than other Americans. Both effects would reduce the class size. Even if we hacked the class down to as few as 1,000 members, which stretches the bounds of generosity, Rosenwald would need $64 million in fees. We can say, to a legal certainty, that is not going to happen.

For all these reasons, the proposed TAC does not adequately allege more than $75,000 is in controversy, and we lack jurisdiction.

### 4.  Claims of Non-California Plaintiffs

The claims of the non-California Plaintiffs do not change that outcome. In the proposed TAC, Plaintiffs seek to represent a class of those who purchased the wipes in California. Kimberly-Clark argues that we must follow the SAC, including within the class those who purchased the wipes in other states. We disagree: when evaluating the TAC, the allegations in the TAC control.

"[J]urisdiction follows from (and only from) the operative pleading." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025). For example, "changes in parties, or changes in claims, effectively remake [a] suit." *Id.* "And that includes its jurisdictional basis: The reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction." *Id.* at 35–36.

Thus, we cannot find jurisdiction by constructing a Frankenstein's monster, stitching some of the allegations from the proposed TAC to others from the SAC. If we deny Plaintiffs' motion for leave to amend, the SAC remains the operative pleading. Plaintiffs sought to represent a nationwide class, so we could consider the non-California Plaintiffs' claims. Even so, we would lack jurisdiction because the SAC does not allege Kimberly-Clark's citizenship or any amount in controversy. On the other hand, if we grant Plaintiffs' motion, the TAC becomes the operative pleading. Because the TAC drops certain (potential) parties and their claims, it rests on a different jurisdictional basis than the SAC. We would consider the TAC's new allegations, like those about Kimberly-Clark's citizenship, but we would be stuck with the parties and claims from the TAC. As already noted, the TAC does not allege more than $75,000 in controversy, so we lack jurisdiction whether we grant or deny Plaintiffs' motion.

Kimberly-Clark points out an exception to the rule from *Royal Canin*: "[i]n both original and removed cases, an amendment reducing the alleged amount-in-controversy to below the statutory threshold—like a post-filing development that makes recovering the needed amount impossible—will usually not destroy diversity jurisdiction." *Id.* at 38 n.8. That exception, however, "is inapposite" when

two conditions hold.  *Id.*  First, the exception "more concerns a fact on the ground—that is, the value of a suit—than it does the plaintiff's selection of claims and parties."  *Id.*  Second, the exception "responds to the difficulties of assessing a suit's value and the likelihood that the calculation will change over the course of litigation."  *Id.*  That concern does not "limit the effect of the plaintiff's decision, as the master of her complaint, to add or subtract claims or parties."  *Id.*

As a result, the exception does not help Kimberly-Clark. In the proposed TAC, Plaintiffs changed the SAC to omit the claims of the non-California class members.  All they did was subtract claims and parties.  For the same reasons as in *Royal Canin*, the exception is inapplicable and the general rule holds.  We test the proposed TAC by looking at the proposed TAC.

Kimberly-Clark next turns to *Broadway Grill, Inc. v. Visa, Inc.*, 856 F.3d 1274 (9th Cir. 2017), but that case does not warrant a different conclusion.  It held plaintiffs may not "amend their complaint, after a case has been removed to federal court, to change the definition of the class so as to eliminate minimal diversity and thereby divest the federal court of jurisdiction."**4**  856 F.3d at 1275.  This was for three reasons.  First, "whether remand is proper must be ascertained on the basis of the pleadings at the time of removal" to avoid forum manipulation.  *Id.* at 1277.  Second, "under CAFA, if minimal diversity exists at the time of removal, jurisdiction could not be divested, even if the situation changed as a result of a later event."  *Id.* at 1278–79.  Third, "citizenship of the class for purposes of minimal

---

4 We assume without deciding that *Broadway Grill* is not "clearly irreconcilable" with *Royal Canin*.  *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

diversity must be determined as of the operative complaint at the date of removal." *Id.* at 1279.

On all three counts, *Broadway Grill* is distinguishable. This case was originally filed in federal court; it was not removed, and no party seeks to remand it. Plaintiffs are not trying to duck a notice of removal. Next, the proposed TAC would not divest the district court of subject-matter jurisdiction. The SAC did not allege Kimberly-Clark's citizenship or an amount in controversy, so there is no subject-matter jurisdiction to divest. That is, the proposed TAC would not create jurisdiction, but it could not destroy it either. Finally, the amendments at issue affect the amount in controversy, but they do not affect diversity of citizenship. Only the latter is tested at the time of removal. Thus, we do not add the non-California claims into our amount-in-controversy calculation.

## IV.  Dismissal Without Prejudice of the Proposed TAC

From here, we have three options: we could dismiss this case without prejudice for lack of subject-matter jurisdiction, we could constructively amend the proposed TAC to allege more than $5 million in controversy, or we could give Plaintiffs another chance to amend their pleadings. We elect the first option, so we explain why constructive amendment and further leave to amend would be inappropriate.

## A.  No Constructive Amendment

Kimberly-Clark argues that we should use a declaration from one of its employees to supplement Plaintiffs' jurisdictional allegations. More broadly, we must decide the question we left open in our prior order: whether we can deem the SAC constructively amended by the parties'

supplemental briefs and declarations and their statements at oral argument.

We—and our sister circuits—have considered several factors in determining whether to constructively amend a pleading. There may be other important factors, and not every case will implicate the six factors below. But each helps here.

First, and most fundamentally, "the plaintiff must enlarge the record to show the" missing fact. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998) (quoting *Dausch v. Rykse*, 9 F.3d 1244, 1245 (7th Cir. 1993)). Thus, courts have made constructive amendments when "the jurisdictional facts appear upon the face of the record[.]" *Norton v. Larney*, 266 U.S. 511, 516 (1925); *accord Wolfe v. Marsh*, 846 F.2d 782, 785 n.4 (D.C. Cir. 1988) (constructive amendment is permissible if "the necessary, but omitted, averments affirmatively appear in the record"). This factor is essential: "the jurisdiction of a federal court must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings." *Norton*, 266 U.S. at 515.

Yet courts have searched widely to find affirmative statements for a constructive amendment. Often, when § 1653 is deployed, "the record discloses, both by affidavit and stipulation, that the jurisdictional condition was satisfied." *Mathews v. Diaz*, 426 U.S. 67, 75 (1976). Courts can accept other materials too. *See, e.g.*, *Chandler v. Miller*, 520 U.S. 305, 313 n.2 (1997) (accepting representation made at oral argument).

Second, even after the plaintiff has enlarged the record, we can constructively amend more easily when the missing

jurisdictional fact is supported by stronger evidence. For example, "we [have] deem[ed] it to be the better practice that [the amended] allegations be supported by prima facie proof." *Blue Ridge*, 142 F.3d at 1148 n.3. Similarly, we have constructively amended a plaintiff's pleadings to include a fact where the plaintiff proffered "sufficient evidence in the record to establish" the missing fact. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 907 (9th Cir. 2011). To be clear, however, evidence is not always required: the statute "speaks only of amending '[d]efective *allegations* of jurisdiction,'" not *proof. Blue Ridge*, 142 F.3d at 1148 n.3 (emphasis in original) (quoting 28 U.S.C. § 1653).

Our sister circuits follow similar rules. In the Fifth Circuit, courts "allow[] direct amendments to the pleadings without a remand" "[w]here jurisdiction is clear from the record." *See Seguin v. Remington Arms Co., L.L.C.*, 22 F.4th 492, 495 (5th Cir. 2022) (second alteration in original) (quoting *Molett v. Penrod Drilling Co.*, 872 F.2d 1221, 1228 (5th Cir. 1989)). "When the record is less clear 'but there is some reason to believe that jurisdiction exists, [courts] may remand the case . . . for amendment of the allegations and for the record to be supplemented.'" *Id.* at 496 (quoting same). The Second Circuit has also permitted constructive amendment in cases where "there is nothing in the record to suggest lack of jurisdiction." *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997). Where "the record clearly indicates that the complaint could not be saved by any truthful amendment," the Second Circuit will not even remand to give the plaintiff an opportunity to amend. *Id.*

Third, we also find constructive amendment easier when the missing jurisdictional fact "is undisputed." *Snell v. Cleveland, Inc.*, 316 F.3d at 828. Other courts have done the same. *See, e.g.*, *Realty Holding Co. v. Donaldson*, 268 U.S.

398, 400 (1925) (permitting constructive amendment in part because jurisdiction was conceded by the parties and assumed by the courts below); *Norton*, 266 U.S. at 516 (noting that "the practice of [the Supreme Court] has been to remit the question of amendment to the lower court unless the parties consented to an amendment"); *Seguin*, 22 F.4th at 495 (summarizing case holding that "allowing an amendment on appeal to the assertions of jurisdiction in a petition for removal was proper when the truth of the revisions was conceded by the other party"); *Canedy*, 126 F.3d at 103 (constructively amending complaint to include affidavits in part because "the facts stated in the affidavits are contested by neither party"). This factor only goes so far: "litigants cannot stipulate to subject matter jurisdiction where it does not otherwise exist." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018). But because a party's "concession" of a jurisdictional fact may be "tantamount to [an] express[] alleg[ation]" of that fact, such a concession can buttress a constructive amendment. *Id.*

Fourth, we will not use constructive amendment to dragoon a plaintiff into making jurisdictional allegations they have no interest in. After all, "because the plaintiff is the absolute master of what jurisdiction it invokes, jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Balser v. Dep't of Just., Off. of U.S. Tr.*, 327 F.3d 903, 908 (9th Cir. 2003) (cleaned up) (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986)). For example, we can be "generous in construing a complaint," but we cannot "go beyond the face of the complaint, as well as the record, to impute allegations that contradict the complaint." *Hahn v. United States*, 757 F.2d 581, 587 (3d Cir. 1985). Even when the imputed

allegations would not directly contradict the complaint, we have declined to impose a constructive amendment when the plaintiff had opportunities to fix their complaint but "availed [themselves] of none of th[o]se courses." *Molnar v. Nat'l Broad. Co.*, 231 F.2d 684, 686 (9th Cir. 1956).

Fifth, courts favor constructive amendment when the parties developed the record enough to "eliminat[e] any element of surprise." *Norton*, 266 U.S. at 516. If constructive amendment will prejudice a party, it is less likely to be appropriate. *Cf. Mathews*, 426 U.S. at 75 n.9 (noting that permitting one party to amend would not prejudice the other).

Sixth, courts constructively amend pleadings when "the defect may be cured by amendment and nothing is to be gained by" further proceedings to correct the error. *Realty Holding*, 268 U.S. at 400; *see Mathews*, 426 U.S. at 75 n.9 (noting the "statutory purpose of avoiding needless sacrifice to defective pleading"). By contrast, courts will not perform constructive amendments when they neither advance "judicial economy" nor ensure "that a plaintiff is not denied his day in court on the basis of technical flaws in his pleading." *Wolfe*, 846 F.2d at 785 n.4; *accord Com. Union Ins. Co. v. United States*, 999 F.2d 581, 586 (D.C. Cir. 1993). More often, however, refusing to allow a constructive amendment "would not be productive" because "[t]he case would come back to federal court like a yo-yo, this time with the proper allegations." *Pecoraro v. Menard, Inc.*, 735 F. App'x 217, 218 (7th Cir. 2018).

On balance, these factors cut against constructive amendment. Kimberly-Clark wants us to "deem the inadequate jurisdictional allegations in the second amended complaint to have been constructively amended by evidence

establishing CAFA jurisdiction." The missing allegation, then, is that the class's claims place more than $5 million in controversy.

But the first factor cuts against amendment because Plaintiffs have not made that allegation. To the contrary, Plaintiffs' counsel says he cannot allege in good faith "that an award of attorneys' fees or punitive damages here . . . would plausibly bring a possible award to the $5m mark of . . . CAFA."

In this case, the second through fourth factors overlap, and they support the same conclusion: because Plaintiffs deny that more than $5 million is in controversy, we have weaker evidence of that fact; CAFA jurisdiction is not undisputed because Plaintiffs contend it does not exist; and finding CAFA jurisdiction would deprive Plaintiffs of their right to pick and choose their jurisdictional theories.

Because Kimberly-Clark would not be prejudiced, the fifth factor does not cut against amendment. Nevertheless, although prejudice and surprise, when present, may cut strongly against a constructive amendment, their absence provides little affirmative reason to permit one.

Kimberly-Clark has a better argument that the sixth factor supports constructive amendment. There is some risk that, if we dismiss for lack of subject-matter jurisdiction, Plaintiffs will re-file in state court, Kimberly-Clark will remove, and we will be hearing the same case again. This would impede judicial economy somewhat. But Plaintiffs might not re-file and Kimberly-Clark might not be able to remove. If so, declining to constructively amend would serve some purpose. Also, we think Kimberly-Clark exaggerates the prejudice it would suffer if Plaintiffs re-file. If this case belongs here, Kimberly-Clark will be able to

remove as soon as Plaintiffs re-file in state court. Kimberly-Clark will not be burdened by state-court proceedings unless this case belongs in state court. Also, this case was dismissed at the pleading stage. If we dismiss this case, some work may be redone in state court, but not much. Thus, we are convinced that dismissing this case is the right course.

## B. No Further Leave to Amend

Although 28 U.S.C. § 1653 provides a "liberal amendment rule," that rule is not unlimited. *NewGen*, 840 F.3d at 613 (quoting *Am. Combustion*, 797 F.2d at 1044). That statute exists "to avoid the needless expenditure of judicial resources" and it ceases to operate when further amendment no longer serves that purpose. *Id.*

We have reached that point here. Plaintiffs are not *pro se*; they have sophisticated counsel. Even so, they failed to plead subject-matter jurisdiction in the original Complaint, First Amended Complaint, or SAC. We issued two orders outlining our jurisdictional concerns. Yet Plaintiffs' TAC is far from alleging a viable amount in controversy. We do not think a Fourth Amended Complaint would be different. Plaintiffs have now foresworn that they can allege more than $5 million in controversy, and they have fallen far short of alleging more than $75,000 in controversy. We do not want to derail this case on jurisdictional grounds, but we cannot expand our jurisdiction to hear this case.

## CONCLUSION

For the foregoing reasons, we conclude that neither we nor the district court has subject-matter jurisdiction to hear this case. As a result, we vacate the judgment against Plaintiffs and remand with instructions to dismiss this case without prejudice.

**VACATED.**

Because we would lack subject-matter jurisdiction even with the proposed TAC, Plaintiffs' motion for leave to amend (Dkt. 39) is **DENIED** as **MOOT**.

Each side shall bear its own costs on appeal.