**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELIZABETH PEREZ, individually, and on behalf of all others similarly situated,

*Plaintiff - Appellee*,

v.

ROSE HILLS COMPANY, a Delaware corporation,

*Defendant - Appellant*.

No. 25-68

D.C. No. 2:24-cv-04827-JLS-PVC

OPINION

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted February 6, 2025
Pasadena, California

Filed March 14, 2025

Before: Mary M. Schroeder, Eric D. Miller, and Roopali H. Desai, Circuit Judges.

Opinion by Judge Miller

## SUMMARY[*]

### Class Action Fairness Act

The panel (1) vacated the district court's order remanding to state court an action that was removed to federal court under the Class Action Fairness Act ("CAFA"), and (2) remanded to the district court for further proceedings.

The plaintiff, a former employee of defendant Rose Hills Company, sued on behalf of herself and a class of similarly situated employees, alleging violations of various California wage-and-hour laws. Rose Hills removed the case to federal court under CAFA. The district court held that it lacked jurisdiction because the removing defendant did not meet CAFA's $5 million amount-in-controversy requirement.

The panel held that the removing defendant was permitted to rely on a chain of reasoning that includes reasonable assumptions to calculate the amount in controversy. The approach employed by Rose Hills tracks the approach approved in *Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2010). Rose Hills provided a declaration from a company representative showing the number of nonexempt employees it employed during the class period. Rose Hills then computed the amount in controversy by making an assumption about the rate at which it was alleged to have committed the various violations, and tethered that assumption to the language of the complaint. Under *Arias*, the district court should have

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

considered whether the violation rate that Rose Hills assumed was a reasonable interpretation of the complaint. Instead, the district court rejected Rose Hills's assumption because Rose Hills did not submit evidence justifying the particular violation rate it assumed.

Because the legal errors in the remand order prevented the district court from adequately evaluating whether Rose Hills's violation-rate assumption was a reasonable interpretation of the complaint, the panel vacated the remand order and remanded this case to the district court for further proceedings.

## COUNSEL

Edward Kim (argued), John G. Yslas, Eugene Zinovyev, Andrew Sandoval, Aram Boyadjian, and Jeffrey Bils, Wilshire Law Firm, Los Angeles, California, for Plaintiff-Appellee.

Carrie M. Francis (argued) and Lonnie J. Williams Jr., Stinson LLP, Phoenix, Arizona, for Defendant-Appellant.

## OPINION

MILLER, Circuit Judge:

The Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4, permits defendants in certain class actions to remove the actions from state court to federal court if the amount in controversy exceeds $5 million. In calculating the amount in controversy, a removing defendant may make reasonable assumptions based on the plaintiff's complaint. In this case, however, the district court imposed a more demanding evidentiary burden. We vacate its decision remanding this case to state court, and we remand to the district court for further proceedings.

Elizabeth Perez is a former hourly employee of Rose Hills Company, a funeral home and mortuary in Whittier, California. On behalf of herself and a class of similarly situated employees, Perez sued Rose Hills for violating various California wage-and-hour laws. Perez's complaint asserted nine causes of action, the first four of which are particularly relevant here: (1) failure to pay wages for all regular hours worked, (2) failure to pay overtime wages, (3) failure to provide meal periods, and (4) failure to authorize and permit rest periods.

Perez's complaint did not identify the amount in controversy, nor did it precisely describe the frequency with which Rose Hills committed the alleged violations. Rather, it stated that Rose Hills committed the violations "at times" and "throughout the statutory period." The complaint defined the class as "[a]ll persons who worked for [Rose Hills] in California as an hourly-paid or non-exempt employee at any time during the period beginning four years

before the filing of the initial complaint in this action and ending when notice to the Class is sent."

Rose Hills removed the case to federal court under CAFA. To establish the amount in controversy, Rose Hills began by identifying the class size. It submitted a declaration from its attorney stating that, during the four-year class period, it employed 759 nonexempt employes. It then made a series of assumptions. First, Rose Hills estimated the "violation rate," or the frequency with which it allegedly violated the law. Based on Perez's allegations that Rose Hills committed violations "at times," Rose Hills assumed that, every week during the class period, it failed to pay all class members for one hour of regular time, one hour of overtime, a one-hour compensable meal break, and a one-hour compensable rest break. Next, it used the minimum wage in California during the class period to estimate a wage rate of $14 for regular time (including meal and rest periods) and $21 for overtime. It then multiplied the number of employees by the number of weekly violations per employee, the number of weeks in the four-year period, and the wage rate to arrive at an amount in controversy for counts one through four. Rose Hills separately estimated the amount in controversy for the other counts and added an assumption that Perez's attorneys would seek a 33 percent fee award. It ultimately alleged an amount in controversy of $15,207,344.

Acting sua sponte, the district court issued an order directing Rose Hills to show cause why the case should not be remanded to state court. The district court noted that Rose Hills "[did] not provide a basis for its violation-rate assumptions" applicable to counts one through four, causing the court to question whether the amount-in-controversy requirement was satisfied. In response, Rose Hills argued that its assumption was "well in line with violation rates

accepted by Courts in the Ninth Circuit based on similarly vague Complaint allegations." In what it described as "an effort to fully demonstrate the reasonableness of its assumptions," Rose Hills reran its calculations using a violation rate 50 percent lower than its original assumption and arrived at an amount in controversy of $6,853,488—still comfortably above the statutory threshold of $5 million. For her part, Perez responded to the order to show cause by arguing that Rose Hills's violation-rate assumption was unreasonable because it was not "supported by actual evidence."

The district court concluded that it lacked jurisdiction, and it remanded the case to state court. The court stated that in responding to the order to show cause, Rose Hills "was required to produce *evidence* supporting its amount-in-controversy estimate." In the court's view, Rose Hills had failed to do so. The court reasoned that Rose Hills's approach "amount[ed] to little more than plucking a violation rate out of the air and calling it 'reasonable,'" adding that "[i]f one is going to assume a violation rate based on nothing more than language in a complaint referencing a 'pattern and practice,' then there is no basis for suggesting that" the violation rate Rose Hills assumed "is any more or less reasonable than a violation rate" of one half or one quarter that rate.

Rose Hills petitioned for permission to appeal the district court's remand order, and we granted the petition. *See* 28 U.S.C. § 1453(c)(1). We review the remand order de novo. *See Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022).

"Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin*

*Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Specifically, CAFA permits a defendant to remove a class action to federal court if there is minimal diversity between the parties (that is, at least one plaintiff is a citizen of a different State from at least one defendant), if the class contains at least 100 members, and, as we have already explained, if the amount in controversy exceeds $5 million. *See* 28 U.S.C. §§ 1332(d), 1453(b). Here, no one disputes that minimal diversity exists and that the class has more than 100 members; the only question is whether the amount-in-controversy requirement is satisfied.

When a CAFA defendant removes a class action to federal court, its "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. "Evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* If the allegation is disputed, then the party seeking removal—and invoking the jurisdiction of the federal courts—bears the burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $5 million. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).

Because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability," a removing defendant need not present evidence of what its ultimate liability will be—in many cases, the defendant presumably expects that figure to be zero. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Instead, the defendant "is permitted to rely on 'a chain of reasoning that includes assumptions'" to calculate the amount in controversy. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (quoting

*Ibarra*, 775 F.3d at 1199). While "those assumptions cannot be pulled from thin air," *Ibarra*, 775 F.3d at 1199, they can be "founded on the allegations of the complaint" and do not necessarily need to be supported by evidence. *Arias*, 936 F.3d at 925. The district court's task is simply to determine if the defendant's "reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993.

What makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue. For example, in a wage-and-hour case, the number of employees in the class may be most easily determined by examining the defendant's employment records. It therefore may make sense to expect a defendant to introduce evidence of that number. *See Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 917 (11th Cir. 2014) (noting that a CAFA defendant has "access to its own employment records" and can provide information derived from those records "without conceding liability or being unduly burdened"). By contrast, it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist. For that reason, a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint.

Our decision in *Arias* illustrates these principles. There, the plaintiff brought a wage-and-hour class action against Marriott, alleging that it "routinely" failed to pay its employees overtime and to compensate them for rest breaks. 936 F.3d at 926 (emphasis omitted). From those allegations, Marriott computed the amount in controversy by assuming that it failed to pay each class member for 30 minutes of overtime per week and for one missed rest break per week. *Id.* The district court characterized those assumptions as

"'speculation and conjecture,' apparently because Marriott did not provide evidence proving the assumptions correct." *Id.* at 927. We vacated the district court's order, explaining that "assumptions made part of the defendant's chain of reasoning need not be proven." *Id.* A contrary holding, we observed, would "impose[] a requirement that [the defendant] prove it actually violated the law at the assumed rate," even when the defendant maintains that it did not violate the law at all. *Id.*

The approach employed by Rose Hills here tracks the approach we approved in *Arias*. Like Marriott, Rose Hills provided a declaration from a company representative showing the number of nonexempt employees it employed during the class period. *See* 936 F.3d at 923. Also like Marriott, Rose Hills then computed the amount in controversy by making an assumption about the rate at which it was alleged to have committed the various violations. *See id.* at 926. It tethered that assumption to the language in the complaint—namely, that it had committed the alleged violations "at times" and "throughout the statutory period."

Under *Arias*, the district court should have considered whether the violation rate that Rose Hills assumed was a reasonable interpretation of the complaint. Instead, it rejected the assumption because it was not supported by evidence. In doing so, the court relied on our decision in *Ibarra*. But that case does not require that defendants support their violation-rate assumptions with evidence.

The complaint in *Ibarra* alleged that the defendant had a "pattern and practice" of committing employment-law violations, including failing to provide meal and rest breaks. 775 F.3d at 1198–99. From that allegation, the defendant

assumed that it was alleged to have failed to provide a break every time an employee was entitled to one. *See id.* at 1198. The district court remanded the case to state court, explaining that the defendant did "not provide a basis in the complaint or in evidence for [its] assumption that plaintiffs were never provided breaks." *Id.* at 1196 (alteration in original). We agreed with the district court that it was unreasonable for the defendant to assume that it violated the law "every time the wage and hour violation could arise" because "pattern and practice" does not mean "universally," and other allegations in the complaint suggested that the violations did *not* occur "on each and every shift." *Id.* at 1199. We vacated the remand order and remanded the case to the district court "to allow both sides to submit evidence related to the contested amount in controversy." *Id.*

The key to our holding in *Ibarra* was that the defendant had to submit evidence of the violation rate because its interpretation of the allegations in the complaint *was unreasonable*. Our decision suggests only that if a violation rate cannot be justified by the allegations in the compliant, it must be justified by something else. We did not hold that violation rates drawn from *reasonable* interpretations of the complaint must independently be supported by competent evidence. To the contrary, we reaffirmed that a removing defendant may rely on assumptions to establish the amount in controversy: "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

The district court also believed that because Rose Hills did not submit evidence justifying the particular violation rate it assumed, "there is no basis for suggesting that [this]

violation rate . . . is any more or less reasonable than a violation rate" one half or one quarter as high. But an assumption is not unreasonable simply because another equally valid assumption may exist. *Cf. Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956, 978–79 (9th Cir. 2023) ("A 55-mile-per-hour speed limit is not 'arbitrary' just because 50 miles per hour, or 60 miles per hour, would work equally well.").

Once again, *Arias* is instructive. There, the district court held that Marriott's assumptions were insufficient to support removal, in part, because "[e]qually valid assumptions could be made that result in damages that are less than the requisite $5,000,000 amount in controversy." 936 F.3d at 924 (alteration in original). We rejected that reasoning, describing it as a "misapprehension of the amount-in-controversy requirement." *Id.* at 927. We explained that "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount.'" *Id.* (second alteration in original).

The district court's analysis here was equally flawed. It may be true that the phrase "at times" could support a lower violation rate as easily as it could support the violation rate that Rose Hills assumed. But that does not automatically render the rate assumed by Rose Hills unreasonable. And if Perez believed that some other assumption would have been *more* reasonable, she was free to propose that rate. (She was also free to use some more specific phrase than "at times" when drafting the complaint; had she done so, she could have constrained the range of assumptions that Rose Hills could reasonably adopt.) The district court could then have weighed the evidence and arguments in deciding which

assumption was more appropriate. *See Jauregui*, 28 F.4th at 996.

The legal errors in the remand order prevented the district court from adequately evaluating whether Rose Hills's violation-rate assumption was a reasonable interpretation of the complaint. We therefore vacate the remand order and remand this case to the district court for further proceedings.

**VACATED and REMANDED.**