**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| EMPLOYEES AT THE CLARK COUNTY GOVERNMENT CENTER AND/OR ON ITS PROPERTY, | No. 25-6625 |
| | D.C. No. 2:21-cv-01818-APG-VCF |
| *Plaintiffs - Appellees*, | |
| v. | |
| MONSANTO COMPANY; PHARMACIA LLC; SOLUTIA INC., | OPINION |
| *Defendants - Appellants*, | |
| and | |
| UNION PACIFIC RAILROAD COMPANY, CALNEV PIPE LINE, LLC, KINDER MORGAN PIPELINE, LLC, KINDER MORGAN, INC., KINDER MORGAN ENERGY PARTNERS, L.P., CITY OF LAS VEGAS DOWNTOWN REDEVELOPMENT AGENCY, | |
| *Defendants*. | |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted November 18, 2025
Pasadena, California

Filed December 29, 2025

Before: Kim McLane Wardlaw and Eric D. Miller, Circuit
Judges.[*]

Opinion by Judge Miller

## SUMMARY[**]

### Class Action Fairness Act

The panel reversed the district court's order remanding to state court an action brought by a class of individual plaintiffs who who alleged they were injured while working at the Clark County Government Center because they were exposed to toxic waste dumped at the site.

---

[*] Judge Sandra S. Ikuta, who died on December 7, 2025, was originally a member of this panel. Judge Wardlaw and Judge Miller decided the appeal as a two-judge quorum. *See* 28 U.S.C. § 46(d); 9th Cir. Gen. Ord. 3.2(h).

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Plaintiffs originally brought this case in Nevada state court alleging that some of the waste dumped at the site contained polychlorinated biphenyls (PCBs), and that the former Monsanto Company (Old Monsanto) manufactured more than 99 percent of all PCBs sold in the United States. Old Monsanto's corporate successors—Pharmacia LLC, Solutia Inc., and Monsanto Co—removed this case to federal court under the Class Action Fairness Act ("CAFA"). The district court granted plaintiffs' motion to remand this case to state court, holding that this case falls within CAFA's "local controversy exception."

The panel held that CAFA's local controversy exception does not apply because plaintiffs cannot satisfy the "principal injuries" element of the exception, which directs the federal court to decline to exercise jurisdiction if, among other requirements, the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III). Here, the principal injuries of Old Monsanto's alleged conduct were not incurred in Nevada. Plaintiffs made no allegations suggesting that the injuries from PCBs in Nevada were more significant than those in other States. Accordingly, the panel reversed the district court's order remanding the case to state court.

## COUNSEL

Lindsay A. Dibler (argued), The Law Office of Lindsay A. Dibler LLC, St. Louis, Missouri; Craig A. Mueller, Mueller & Associates Inc., Las Vegas, Nevada; for Plaintiff-Appellee.

Lauren R. Goldman (argued), Gibson Dunn & Crutcher LLP, New York, New York; Amir C. Tayrani, Russell B. Balikian, and Andrew Ferguson, Gibson Dunn & Crutcher LLP, Washington, D.C.; Chad R. Fears and Kelly A. Evans, Evans Fears Schuttert McNulty Mickus, Las Vegas, Nevada; for Defendants-Appellants.

## OPINION

MILLER, Circuit Judge:

The Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4, permits defendants in certain class actions to remove the actions from state court to federal court. But CAFA also contains a provision known as the "local controversy exception," which directs the federal court to decline to exercise jurisdiction if, among other requirements, the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III). This case was originally filed in Nevada state court, but it involves injuries allegedly caused by toxic chemicals that were distributed nationwide. Because the principal injuries resulting from that conduct were not incurred in Nevada, we reverse the district court's order remanding the case to state court.

Plaintiffs are 169 individuals who worked at the Clark County Government Center, a municipal building in Las Vegas. The building was constructed on a site previously owned by Union Pacific Railroad, which used it as a rail yard. The Las Vegas Downtown Redevelopment Agency acquired the site from Union Pacific and later sold it to Clark

County. Plaintiffs allege that they were injured while working there because they were exposed to toxic chemicals present at the site.

According to plaintiffs, Union Pacific dumped diesel fuel and other waste at the site. Plaintiffs allege that some of that waste contained polychlorinated biphenyls (PCBs), which were used in a variety of industrial applications until Congress banned their production in the late 1970s. *See* 15 U.S.C. § 2605(e). Plaintiffs further allege that the former Monsanto Company (Old Monsanto) manufactured more than 99 percent of all PCBs sold in the United States. Old Monsanto's corporate successors—Pharmacia LLC, Solutia Inc., and Monsanto Co. (collectively, Pharmacia)—inherited its liability arising from the production, sale, and distribution of PCBs.

Plaintiffs brought this action in Nevada state court against various defendants, including Union Pacific, the Las Vegas Downtown Redevelopment Agency, and Pharmacia. They asserted claims for compensatory and punitive damages based on their allegations that Union Pacific "contaminated the property with various toxic chemicals, including PCBs manufactured, sold, and distributed by Monsanto," and that Union Pacific and the Las Vegas Downtown Redevelopment Agency "failed to remediate the toxic materials" before the land was transferred to Clark County. Plaintiffs allege that their exposure to the toxins caused serious injuries, including neurological disorders, cancer, and, in some cases, death.

Pharmacia removed the case to federal court under CAFA. Plaintiffs moved to remand to state court, and the district court granted the motion. The district court determined that CAFA jurisdiction existed but that the local

controversy exception applied because the case "is isolated to people who worked at the Clark County Government Center on land that had been previously contaminated," and although the PCBs "could have caused injuries elsewhere, . . . the issues and the injuries in this case are localized here."

Pharmacia sought permission to appeal the remand order under 28 U.S.C. § 1453(c), and a motions panel of this court granted the petition. We review the district court's remand order de novo. *Perez v. Rose Hills Co.*, 131 F.4th 804, 807 (9th Cir. 2025).

Under CAFA, district courts have jurisdiction over class actions if the amount in controversy exceeds $5 million and there is minimal diversity, that is, if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). A "mass action"—defined as a civil action in which the "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that plaintiffs' claims involve common questions of law or fact"—is "deemed to be a class action" under CAFA. *Id.* § 1332(d)(11)(A), (B)(i).

Plaintiffs do not challenge CAFA jurisdiction in this appeal, and we agree with the district court that jurisdiction exists. The case is a mass action because there are more than 100 plaintiffs, minimal diversity is present, and—although the complaint does not specify damages—the notice of removal plausibly alleges that the amount in controversy exceeds $5 million given the number of plaintiffs and the seriousness of the injuries alleged. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *Perez*, 132 F.4th at 808. We have not previously decided whether each plaintiff in a mass action must individually satisfy the

$75,000 amount-in-controversy threshold that generally applies to diversity cases, *see* 28 U.S.C. § 1332(d)(11)(B)(i); *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 n.4 (9th Cir. 2009), and we need not do so here because the notice of removal plausibly alleges that plaintiffs meet that threshold as well.

The issue in this appeal is whether this case falls within CAFA's local controversy exception. That exception is "a narrow one," and a plaintiff seeking remand has the burden of establishing its applicability. *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015). CAFA provides that a district court "shall decline to exercise jurisdiction" if (1) more than two-thirds of the plaintiffs are citizens of the forum State; (2) there is at least one local defendant "whose alleged conduct forms a significant basis for the claims" and "from whom significant relief is sought"; (3) the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed"; and (4) no other class action based on the same or similar allegations has been filed in the previous three years. 28 U.S.C. § 1332(d)(4)(A).

Pharmacia argues that plaintiffs cannot satisfy several elements of the exception. We focus on the third—the "principal injuries" element. 28 U.S.C. § 1332(d)(4)(A)(i)(III). We have not previously addressed the requirements of that provision, but the statutory text is clear and prescribes the inquiry we must undertake.

The statute requires the principal injuries from the alleged conduct "of *each* defendant" to have been incurred in the forum State. 28 U.S.C. § 1332(d)(4)(A)(i)(III) (emphasis added). In other words, each defendant's conduct must be analyzed independently. For any given defendant, a

court must first isolate the "alleged conduct or any related conduct of [that] defendant." *Id.* It then must determine whether the "principal injuries resulting from" that conduct "were incurred" in the forum State. *Id.* The "principal" injuries are the most important or significant injuries. *See Webster's Third New International Dictionary* 1802 (2002) ("most important [or] consequential"); *Black's Law Dictionary* 1230 (8th ed. 2004) ("Chief; primary; most important."). The statute thus requires a comparative analysis of the injuries incurred in the forum State and the injuries incurred elsewhere to see whether those incurred in the forum State are the most significant.

Notably, the relevant injuries are not just those suffered by the plaintiffs. Otherwise, plaintiffs could strategically avoid CAFA removal simply by defining the plaintiff class to include only people injured in the forum State. Instead, the statute requires considering *all* injuries caused by "the alleged conduct or any related conduct of [the] defendant." 28 U.S.C. § 1332(d)(4)(A)(i)(III). A court must consider the full scope of the defendant's conduct to determine whether its most significant harms occurred in the forum State.

Applying those principles, we readily conclude that the principal injuries of Old Monsanto's alleged conduct were not incurred in Nevada. According to the complaint, Old Monsanto sold PCBs as "liquid mixtures" to a "variety of industrial customers, for a variety of industrial uses." Those mixtures were "incorporated into many other products," including products "routinely used by [Union Pacific] and other Railroad companies at rail yard sites," such as "hydraulic lubricants, insulators for transformers, capacitors, paints, various solvents, cements, sealants, adhesives, [and] caulk." Old Monsanto "knew or should have known that the PCBs would be released in locations

where they were used, would remain a contaminant for decades after their release, and would pose a health risk to any individuals who could be expected to be present at those locations in the future." Nevertheless, it continued to "produce, market, distribute, and sell its PCBs" while "hiding from the public, its customers, and applicable government authorities the true health risks associated with PCBs."

Plaintiffs' allegations against Old Monsanto strongly suggest that its alleged conduct in producing and selling PCBs caused injury to people everywhere that products containing PCBs were used. Because plaintiffs allege that Old Monsanto sold "more than 99 percent of all PCBs . . . in the United States"—including to "a variety of industrial customers, for a variety of industrial uses"—and that products containing PCBs would "pose a health risk to any individuals who could be expected to be present" at the locations those products ended up, the most logical inference is that its alleged conduct led to injuries in many, if not all, States.

Crucially, plaintiffs make no allegations suggesting that the injuries from PCBs in Nevada were more significant than those in other States. For example, plaintiffs do not allege that PCBs were primarily sold or used in Nevada, that PCBs were unusually likely to be released into the environment in Nevada, or that PCBs caused particularly severe injuries in Nevada. At most, plaintiffs allege that some unknown fraction of all PCBs sold by Old Monsanto "ultimately made their way onto the [Union Pacific] Rail Yard site." But the same could be said of any location where PCBs were released into the environment and caused harm. Thus, the allegations do not establish that the principal injuries arising from Old Monsanto's conduct were incurred in Nevada.

Our examination of the complaint is sufficient to demonstrate that the principal injuries element of the local controversy exception is not satisfied here, and thus we need not rely on evidence introduced by Pharmacia. In *Coleman v. Estes Express Lines, Inc.*, we held that a court should look only at the complaint in determining whether a different element of the local controversy exception is satisfied— namely, whether there is at least one local defendant whose "alleged conduct forms a significant basis for the claims" and "from whom significant relief is sought." 631 F.3d 1010, 1015 (9th Cir. 2011) (discussing 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa)–(bb)). We have not previously considered whether the same is true of the principal injuries element, and we need not do so here. But we note that Pharmacia identifies dozens of cases that have been filed against it in States around the country, all based on injuries resulting from environmental contamination caused by PCBs sold and distributed by Old Monsanto. The geographical diversity of those cases would further confirm our conclusion.

Relying on CAFA's legislative history, plaintiffs argue that "environmental disasters" should be covered by the local controversy exception. As we have already explained, the statutory text is clear, and "[l]egislative history, for those who take it into account, is meant to clear up ambiguity, not create it." *Milner v. Department of the Navy*, 562 U.S. 562, 574 (2011). Moreover, the relevant legislative history here is a report of the Senate Judiciary Committee that was not printed until ten days *after* the President signed CAFA into law and "is therefore of minimal, if any, value" in construing the statute. *Tanoh*, 561 F.3d at 954 n.5.

In any event, even if we were to consider the Senate Report, we would conclude that it supports our

interpretation. The report explains that the purpose of the local controversy exception is "to identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others," and that the purpose of the principal injuries element is "to ensure that this exception is used only where the impact of the misconduct alleged by the purported class is localized." S. Rep. No. 109–14, at 39–40 (2005). The report does not discuss "environmental disasters" as such, but it offers a specific example of an environmental tort case involving localized harms: "[A] class action in which local residents seek compensation for property damage resulting from a chemical leak at a manufacturing plant in that community would fit this criterion, provided that the property damage was limited to residents in the vicinity of the plant." *Id.* at 40. By contrast, the report continues, "if the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it were brought only as a single-state class action." *Id.* Plaintiffs' allegations almost exactly match this latter example, with the only difference being that the injuries were suffered not by the direct consumers of Old Monsanto's products but by those who were exposed to the (widely dispersed) sites at which the products were used.

In reaching a contrary conclusion, the district court relied on our unpublished decision in *Aarstad v. BNSF Railway Co.*, 833 Fed. App'x 94 (9th Cir. 2020). That case involved a mass action against BNSF for injuries resulting from the railroad's transportation of asbestos-laden minerals "in and around Libby, Montana." *Id.* at 98. BNSF urged the court to consider not only the conduct in Libby alleged by the plaintiffs, but also its additional, unalleged conduct—

namely, its transportation of asbestos-laden material in other places. *Id.* at 97. Thus, the case turned on whether BNSF's unalleged conduct was sufficiently related to its alleged conduct such that the court had to consider both in determining where the principal injuries were incurred. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(III) (referring to the "alleged conduct *or any related conduct* of each defendant" (emphasis added)). We concluded that BNSF's conduct elsewhere was not related to the conduct at issue in the case because there was "no evidence that the injuries suffered in Montana resulted from a corporate policy of malfeasance that affected victims nationwide." 833 Fed. App'x at 98. We also noted that BNSF had identified only a "single out-of-state alleged victim," suggesting that the injuries incurred in Montana predominated over any injuries incurred elsewhere. *Id.*

Because *Aarstad* is an unpublished disposition, it does not establish the law of this circuit. *See* 9th Cir. R. 36-3(a); *Gilbert v. 7-Eleven, Inc.*, 157 F.4th 1057, 1070 n.8 (9th Cir. 2025). We need not decide whether its analysis of related conduct is correct because this case does not involve the statute's "related conduct" provision. As we have explained, plaintiffs allege that Old Monsanto engaged in a single, nationwide course of conduct, including selling PCBs to "a variety of industrial customers," and ultimately selling "more than 99 percent of all PCBs . . . ever sold and used in the United States," all without providing adequate warnings of the dangers of PCBs. The principal injuries resulting from that conduct were not incurred in Nevada, so CAFA's local controversy exception does not apply.

**REVERSED and REMANDED.**